oral argument, and we begin with United States v. Devaney. Mr. Smith. Good morning. May it please the court. Matthew Smith for David Devaney Jr. My plan is to talk about the first three issues in my brief today. In the first issue, I'm going to discuss how Mr. Devaney Jr. made an unequivocal and unambiguous request to both terminate the interview and a request for counsel. You're pretty tall, so why don't you pull that microphone up just a little bit. Yes, sir. Yes, sir. A little bit better. Okay. How's that? Thanks, sir. And really, not to oversimplify things, but that Fifth Amendment argument ends there. The questioning should have stopped, but despite that request, the questioning continued, and another request was made, and the questioning continued, and another request was made. That was four times, wasn't it, the request? Yes, sir. Correct. And then I'm going to discuss issues two and three, where we're discussing the warrant affidavits for Mr. Devaney's phone and Mr. Devaney's car. And those affidavits were wholly conclusory and bare-bones as it pertains to the nexus between the car and the phone and any evidence of a crime or evidence to be sought. So, starting first with this Fifth Amendment issue, I've got to have a lawyer. I have to have a lawyer. I have to shut this interview down. But then he said he wanted to keep talking. But, Your Honor, in regard to when we look at Edwards v. Arizona and Smith v. Illinois, when that unequivocal, unambiguous request is made, it's over. And if you look at page 380 of the record, which is the page in which that first invocation happens, there are questions immediately following that invocation. And that's it. It has to stop at that point. And according to Smith v. Illinois, you cannot use post-request answers to questions to then create that ambiguity. So, it should have stopped there. And the United States Supreme Court tells us there are two scenarios in which a citizen can cause a cessation of questioning. Number one, when you invoke that right to counsel. And number two, when you ask to stop the interview. And he did both right then and there. But, assuming the court wants to explore further, he continues to ask for a lawyer. You fast forward to page 387 of the record, a couple of minutes later, and he asked for a specific attorney, Brian Poe, who was my co-counsel at the trial court level and passed away last month. He asked for Brian specifically and said, do you know who Brian is? And they said, well, yes, we do. And can I talk to him? Well, that puts us in an awkward spot. And I agree. It did put them in an awkward spot. To an untrained legal person, it does. But the United States Supreme Court took all the awkwardness out of that. When that request for the attorney is made, all the questions have to stop. He can undo what he has done, though, correct? In the same interview, once he, assuming that he does unequivocally say, I'd like advice of counsel, he can, whether it's a minute later or five minutes later or half hour later, say, I'd like to talk. Can he not undo that? Or are you saying that once he invokes, that's it? Even if he were to come back prior to counsel appearing, even if he were to come back and say, I'd like to talk, that he's still protected by his invocation? Yes, sir. Great question. And our position is it has to stop right then and there until an attorney is made present. Okay. So he can't unring that bell is what you're saying. Yes, sir. I think if he were to reinitiate himself, it's a different analysis. But that did not happen here when you explore the record, though. That did not happen. And then when we get even further into the record on page 417, he's even, Mr. Devaney Jr. himself says, well, is there a way to talk to my attorney without ending the interview? And he's told, no. And then the next question is, I can't ask him anything. I can't call him for advice. I can't call him. No. And then he's so desperate at that point after having this expressed denial of counsel, he's asked, Mr. Devaney says, well, can I call him as a friend? No. And then Commander Sparks, his response is so telling after that. And that's what makes this case unique. Not only do you have an invocation of right to counsel, you have law enforcement expressly denying him the right to counsel. Here's his response. I'm not letting you make no phone calls. I'm not letting you make no phone calls. And he even creates his own Edwards v. Arizona exception. He says, if this wasn't a murder case, I would. Right there in Johnson County, Texas, they've carved out their own exception to Edwards v. Arizona. But . . . To be fair, though, invocation of your right to counsel doesn't equate to the right to make a phone call, whether it's to a friend or to a lawyer. Yes, you're absolutely right. But when you're requesting the advice of an attorney, according to the United States Supreme Court case law, it has to stop. And you've got to make that attorney available. Well, I'm just talking about that you highlighted the response from law enforcement. Yes, sir. I'm not letting you make no phone calls in response to the request for the lawyer. Right? So it's an expressed denial of right to counsel. And my friend on the other side, he says, well, Mr. Devaney, he's trying to have his cake and eat it, too. Right? He's trying to have that attorney present and continue on with the interview. Well, with all due respect, the United States Supreme Court says that's the law. You have the right to do that. But didn't the officer seek clarification from him? Didn't they ask him, are you invoking your right to counsel? And he answered, not yet. I'm not asking for an attorney yet. Correct. However, during that first invocation, and if it was an equivocal invocation, and we look at Davis versus United States, if it was an equivocating response, then they're entitled to continue to ask him questions. But because it was unequivocal and unambiguous, it shouldn't have even gotten that far as our position. So I can't even ask a question to determine whether it's unequivocal and unambiguous? No, Your Honor. And also, we need to rewind a little bit and look at page 380 before that follow-up question clarification is asked. And he's asked further questions about the case. He's asked, well, you didn't have a gun. Neither of those cars were yours. He's continuing to question him. But assuming the court feels like the clarification was allowed, which it's our position that it's not, you have the continued request for counsel even after that clarification issue. So that is our position. And what also makes this case interesting is, and I understand, it can be a burden on law enforcement whenever you have an invocation of right to counsel during the interview, because in all practicality, you have to stop the interview and find an attorney and get an attorney around. And these interviews are late at night sometimes. However, in this particular case, he had a specific attorney in mind and said he could get a hold of him right there. It would have taken just a couple of minutes. But in reality, we know why they didn't want that to happen because if he was able to get a hold of Mr. Poe, in all likelihood, that interview would have stopped. And law enforcement knew that. And that's why he was denied that right to counsel. He was denied that right to contact him. So turning now to, unless the court has further questions on that issue, turning now to the warrant affidavit issue. And we fully respect and appreciate that it is a low, low bar when it comes to the good faith exception. It's a low bar that has to be met. The low bar is set. However, they have to jump over it. And we'll take a look at the phone first. Okay. The government, my friend on the other side, and Judge Pittman in his order, they go through great lengths to say, look, it's 10 pages. It can't be bare bones if it's 10 pages. But with all due respect, it could be 1,000 pages and still be bare bones. As to that issue as to whether there's a connection between the phone and evidence of a crime. And we look at it, it's 10 pages, half of which are descriptions of things that aren't even facts of the case. The phone is mentioned one time in the description of the facts, and that's that the phone was found on David Devaney, Jr. After that, it's not discussed. And my friend on the other side in his brief, he mentioned that. Well, there's mention in the affidavit that Devaney speaks to the other side of the supposed drug deal gone bad via cellular telephone. That's not what the affidavit says. When you look at the record, the affidavit actually says that that man, Francisco, he was talking to subjects. And then the next sentence says it was a female, eliminating David Devaney, Jr. There is no mention. And I think it's helpful to look at United States v. Morton, this last big cell phone case that this court had in 2022, the en banc decision. And in Morton, what's interesting is you have an officer who says, look, in all my training and experience, when you have, I see 16 ecstasy pills, I see marijuana, and the phone is found in the same car as that. In my training and experience, when you look at those facts, a drug dealer more than likely is going to have photos of co-conspirators on his cell phone. He's going to have photos of drugs on his cell phone. He ties it together in Morton. And I think that carried the day in Morton. The facts in combination with the officer tying it together, that's not here. The officer in this case didn't even go as far to say, in my training and experience, I think there's going to be evidence on the cell phone. So that's what makes this affidavit so bare bones. And then you look at the car affidavit. And what's interesting is when you look at the car affidavit and the cell phone affidavit together, except for the last short paragraph, the last, very last paragraph, they're identical. They're the same exact affidavit. And that tells you what they're doing, right? And the other affidavits to search the hotel room and the car, those aren't a part of the records, but we can all, there's no mystery as to what those are going to look like, right? But they have the same affidavit for everything. And for the car, the car is mentioned one time, one time in that affidavit. And the description is, David Aveni, Jr., and it's the day after this incident in question, David Aveni, Jr., on June 25th, he was involved in what's called a brief pursuit with law enforcement in the Corvette. That's the only time the Corvette's mentioned. When we talk about a brief pursuit, those are actions of an officer, the brief pursuit. Those aren't actions of David Aveni, Jr. A brief pursuit is turning on your overhead lights and sirens and pulling over a moving vehicle. That's a brief pursuit. There's no other description. So, also, my friend on the other side mentioned in his brief that, in the car affidavit, that it says that David Aveni, Jr. was fleeing from the scene of where his father was arrested. And with all due respect, and look,   the affidavit speaks for itself, right? With all due respect, it doesn't say that. It doesn't say that he was even at that scene. It doesn't say that he was fleeing. In fact, it says that his father was arrested at Hampton Inn in Burleson and David Aveni, Jr.'s car was stopped at Jacobs Crossing in Burleson. I know this isn't a part of the affidavit, but those are two specifically described locations. They're four miles away from each other. So, and what's interesting too, and this is a part of the record because it's in the PSR, he is charged with evading in Johnson County, which is still pending, and there were facts that could have been described and they just simply weren't described. So, at the end of the day, there is just truly no connection. There's no nexus between these two. There's no nexus between the car and the phone and what evidence they think they're going to find in the car. And I know, and I understand a magistrate is certainly allowed to use inferences. I respect that. But when we look at the specific wording of the Fourth Amendment, no warrant shall issue unless there is probable cause supported by oath or affirmation. It doesn't say probable cause supported by inference. It's what is in the oath or affirmation is what counts. So, unless there's any other questions, I want to reserve the rest of my time for rebuttal. Yes, you've saved your time for rebuttal. Thank you. Thank you. Mr. Vassoso-Martinez? Good morning, Your Honors. May it please the Court. Francisco Vassoso-Martinez for the government. Your Honors, Devaney and his co-conspirators went to a drug deal with fake drugs to conduct business with a group of buyers they knew had previously used fake money to buy drugs in a previous transaction and their drug supplier had told them that they needed to get back at them for that and that they needed to make sure that this fake money business did not happen again. And lo and behold, those buyers went to this new drug transaction with fake money. And when those buyers saw that the sellers, Devaney and the co-conspirators, had gone to this new transaction with fake drugs, they pulled out of the deal, they got in their car and left. But Devaney and the co-conspirators did not leave it at that. They got into their three cars and went after them. They pursued them. They chased them down. They used their three cars to maneuver and stop the buyer's car to prevent them from getting away and opened fire. And as a result of that, an innocent bystander, who just so happened to be driving by, ended up getting shot and killed. Now Devaney raises a number of issues on appeal, none of which is availing. For starters, he did not unequivocally invoke his right to counsel during the interrogation. Now, the first reference to his attorney may, in isolation, be seen, yes, as an unequivocal invocation. But as Carrillo tells us, context matters. And when we look at the interview, we see that there was a sort of negotiation going on here. He was trying to get something from the officers at this point. He was trying to get some, as he referred to, some assurances from them before he continued to speak. Because when he was given his Miranda rights initially, he was very forthcoming. He was talking to these police officers. But then he became sort of restrained with his answers and said, well, when the officer said that we can make no assurances, well, then I'll have to get a lawyer and shut this interview. I don't want to, but I think that phrase is very important because that suggests that he was weighing his options. And the officers immediately said, this interview is on you, meaning they made it very clear again, this interview is on you. It's up to you whether we continue this interview. And when they asked point blank, do you want to speak to your attorney? As Judge Ramirez said earlier, not yet, not yet. I'm not asking for my attorney yet. And when we look at the other times that he referred to an attorney in the interview, we see again, he knew how to invoke his right to counsel, and he chose not to. Take, for instance, when he referred to his attorney by name. It was always sprinkled with caveats. First saying, could you call him for me? The officer said, he couldn't be a middleman. Can I call him as a friend? I'm not hiring him yet. I don't want to end the interview. Even later on, referring to it as a, quote, concession. Is there a way to speak to my attorney without ending the interview? The attorney, the officer said, no. And when the officer said, I am not letting you make no phone call, immediately thereafter, the officer said, basically, if you make a phone call, that ends the interview. And that's it. So the officer was making it clear. Either you call your attorney, or you continue the interview. And as he did before, he chose to continue the interview. And therefore, your honors, as the government maintains, that he never invoked his right to counsel. Now, moving on to the suppression issues. Excuse me. The government would like to first address the matter of DeVaney's assertion that the government has made certain misrepresentations as to the affidavits. First, yes, the affidavit does not say specifically that a buyer spoke to DeVaney via cell phone. However, the affidavit does say that the buyer spoke to DeVaney and the buyer spoke to these subjects prior to the drug deal. And we believe it is a fair reading for two reasons. First, throughout the affidavit, DeVaney is one of, quote, these subjects related to this drug deal. And second, we disagree with limiting these subjects to the unknown female referred to in the immediate sentence after that, because in that very sentence, that female is referred to as an associate of these subjects. So right there, she is a distinct and separate entity from these subjects. But even if the government was reaching, we still have buyers and sellers communicating with one another regarding this drug deal. Now, on the second point, the government did inadvertently state, at page 26, that DeVaney was fleeing from his father's arrest at the time of his own arrest. However, in the facts section, the government did correctly narrate and summarize the facts and circumstances surrounding DeVaney's arrest after he had led police officers in a car chase in a different location at a different time. I just mistakenly forgot to extract that reference to the father's arrest in the later portion of the brief, and I apologize for any confusion that may have caused. But in any event, for purposes of the suppression, we still have DeVaney fleeing from police in his car and evading arrest. He even got out and fled on foot before being apprehended. Now, on the substance, the district court did not clearly err in finding that the good-faith exception applied. These affidavits gave ample facts and circumstances for a magistrate to find probable cause. But probable cause isn't the question. The question is whether law enforcement had good-faith reliance of the warrants because they were supported by more than bare-bones affidavits, and they were. These were 9 and 10 pages of the who, the what, the where, the when, and the how of DeVaney's crimes. DeVaney was arrested with two cell phones on his person after leading officers in a brief pursuit, which we believe is a fair reading. This means a brief pursuit meaning that a reasonable person would see that as saying that long enough to understand that he is evading arrest, as the officer said in the affidavit, and that this arrest was based on arrest warrants that were issued for his role as security, as a recruiter, and as a shooter at the drug deal and shooting the prior day, and a drug deal for which his father and a co-conspirator had already been arrested earlier in the day with drugs and guns on them, that buyers and sellers had already been communicated via cellular phones, that DeVaney had contacted and recruited some of the co-conspirators, and that co-conspirators, five of them, had arrived at the point of the transaction in three separate vehicles, suggesting that unless they were screaming at each other from across the parking lot, they were communicating via cell phones. As for the training experience, your officers, yes, your honors, the officer stated, the officer did not, as in Morton State, and probably not in the neat one paragraph, his training experience, but when we look at the affidavit as a whole, we see that he said that he was a detective in the Criminal Investigations Division of the Burleson Police Department, that he had investigated numerous cases like this involving fake money and fake drugs, that his experience often lead to homicides and shootings, and that with this training experience, based on these facts, based on DeVaney's statements, based on the fact that he had evaded police in this car, that the cell phones may contain evidence of the crimes, and that a reasonable, prudent person would believe that evidence would be in the car. These facts were presented to a neutral, detached magistrate who found, based on a common sense reading of the entire affidavit as a whole, that probable cause was there, and this was a reasonable reading, and it was a good faith reliance on the part of officers to rely on those warrants. Moving on to the sentencing, the government maintains the murder cross-reference is an appropriate application. As I summarized when opening, the facts ably demonstrate by a preponderance of the evidence that the 2A1.1 murder cross-reference applies here. This was a joint undertaking related to a drug deal gone bad, not just any drug deal gone bad where random people start shooting at one another and just so happens that someone ends up getting shot. This was a drug deal entered into in ill intent from the get-go. And regardless of if there's any unease in regards to premeditation, Your Honors, even if this court were to apply the second-degree murder cross-reference 2A1.2 based on all the other enhancements, and even if we were to give Devaney the benefit of the doubt as to the acceptance role and the aggravating role, he would still be at a 44, and therefore he would still be under the guidelines on a 43, and therefore he would still be under the same guidelines. And if the court has no further questions, the government would submit on the briefs and ask that they affirm. All right, thank you, Mr. Pososa-Martinez. Mr. Schmidt for Rabeau? Thank you. I think what's so critical, and I agree with my friend on the other side, yes, context does definitely matter. And when we look at page 380 of the record, you have at the very top, I have to get a lawyer, I have to shut the interview down. Again, that is when it ends. That is when it ends. He brings up the second portion of that statement, I have to shut the interview down. I mean, I don't want to, but . . . And then you see dash, dash. And then you see Commander Sparks say, the interview's on you, and he continues to get into his own dialogue to convince him to talk. Sparks didn't let him finish that statement. He could have been saying, I don't want to incriminate myself. I don't want to continue the interview. He wasn't able to finish that sentence. Wasn't able to finish it. But yes, context does matter. And even after the unequivocal request for counsel, you have two more after that later on in the interview. Now, my friend also brings up the fact that, look, Devaney, he was trying to cut a deal. He was trying to negotiate. Well, why don't we take a look at Edwards v. Arizona? The landmark case in Judge White's opinion, Justice White's opinion in that case. Because guess what Edwards was doing? He was trying to make a deal. In fact, Edwards' exact statement that was deemed unequivocal and unambiguous was, look, I want an attorney before I make a deal. And that was deemed to shut the whole thing down. No questions after that, according to Edwards v. Arizona. Back to, again, this cell phone issue, right? My friend describes a car chase. With all due respect, we're bound to the four corners of the affidavit, and that affidavit does not describe a car chase. It does not describe flight. It describes a brief pursuit, which is simply just turning on the lights and pulling someone over. That's a brief pursuit. He's also talking about, now, I don't believe this was in his brief, but today he mentions, well, there was also contact between the co-defendants. You know, they were contacting each other before the incident on the 24th. It doesn't say how they were contacting each other. It doesn't say whether they met in person. It doesn't say whether they called each other. It doesn't say whether they emailed each other. It doesn't say whether they texted each other. It doesn't say that cell phones were involved there. There is no nexus between those cell phones and evidence of a crime. It's just simply not there. It's bare bones. And he also talks, we hit back to this training and experience issue, and he said, look, at the end of the affidavit, the officer said, based on the suspected party's statements and all the facts I stated and my training and experience, I think there's crime. I'm sorry that's not what it says. I'm looking at it right now. It's page 82 of the record, paragraph 45. It does not say based on my experience. It doesn't. It's not there. And I think when it comes down to this analysis of the Fourth Amendment issue, we got to stick with what's within those four corners. So thank you for your time today. We respectfully request that you deem this statement, these 86 questions that happened afterwards of all those indications of right to counsel inadmissible and that these two affidavits were bare bones and respectfully request you remand this case back to the trial court for a new trial. Thank you so much. Thank you, Mr. Smith. Your case is under submission. We noticed that you're court appointed. We wish to thank you for your willingness to take the appointment and for your good work on behalf of your client. Yes, sir. Thank you so much. Thank you. Next case for today.